UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JACK J. THOMPSON,

       Plaintiff,

v.                                                      Case No. 1:10-cv-2
                                                      Hon. Robert J. Jonker

COMMISSIONER OF SOCIAL
SECURITY,

       Defendant.
                                               /

## REPORT AND RECOMMENDATION

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) denying his claim for disability insurance benefits (DIB) and Supplemental Security Income (SSI).

Plaintiff was born on June 20, 1970 (AR 31).[1] Plaintiff testified that he completed the tenth grade (AR 31).[2] Plaintiff alleged a disability onset date of February 1, 2006 (AR 110). He had previous employment as a cook and as a line worker/assembler (AR 125). In his disability report, plaintiff identified his disabling conditions as being blind in the right eye, having a cornea transplant for the eye and then having a cataract form on the transplant resulting in blindness (AR 134).[3] Plaintiff stated that due to this condition he is not able to fully focus and does not have "full

---

[1] Citations to the administrative record will be referenced as (AR "page #").

[2] The court notes that plaintiff stated in his disability report that he completed one year of college and had special training in plastic injection (AR 138-39).

[3] The court notes that plaintiff has not identified any medical record stating that he suffers from a cataract.

range of perception" (AR 134). On April 29, 2009, an Administrative Law Judge (ALJ) reviewed plaintiff's claim *de novo* and entered a decision denying benefits (AR 16-23). This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Servs.*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not

3

disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases. *See Bailey v. Secretary of Health and Human Servs.*, No. 90-3265, 1991 WL 310 at * 3 (6th Cir. Jan. 3, 1991). "The proper inquiry in an application for SSI benefits is whether the plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

At step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of February 1, 2006, and met the insured status requirements as of the Social Security Act through December 31, 2010 (AR 18). At step two, the ALJ found that plaintiff suffered from severe impairments of : "status post penetrating keratoplasty of the right eye with decreased depth perception and increased photophobia; and sleep apnea" (AR 18). At step three, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1(AR 18).

The ALJ decided at the fourth step that plaintiff had the residual functional capacity (RFC):

> . . . to perform a full range of work at all exertional levels that does not require climbing ladders, ropes or scaffolds, or standing rapidly from a seated position, or more than occasionally crouching or crawling. The claimant can frequently balance, stoop, and kneel. The claimant has limited depth perception, and limited near and far acuity, and is precluded from reading fine print smaller than newspaper print. The claimant must work in an environment with reduced lighting such as a library type setting. The claimant must avoid all exposure to unprotected heights and dangerous,

moving machinery. The claimant must avoid concentrated exposure to temperature extremes, such as extreme heat and cold.

(AR 19). The ALJ also found that plaintiff was unable to perform any past relevant work (AR 21).

At the fifth step, the ALJ determined that plaintiff could perform a significant number of light jobs in the national economy (AR 22). Specifically, plaintiff could perform the following representative occupations:

> . . . information clerk (unskilled/sedentary) of which there are 600 jobs in Grand Rapids and 14,000 jobs in the State of Michigan; charge account clerk (unskilled/sedentary) of which there are 500 jobs in Grand Rapids and 5,000 jobs in the State of Michigan; and host/greeter (unskilled/sedentary) of this there are 900 jobs in Grand Rapids and 8,000 jobs in the State of Michigan.

(AR 22). Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act, from February 1, 2006 through the date of the decision (AR 22-23).

### III. ANALYSIS

Plaintiff has raised one issue on appeal.

**Substantial evidence does not support the ALJ's finding that Mr. Thompson was not limited to working in "movie theater darkness" as he testified, but rather that he could work in "reduced lighting such as a library type setting."**

### A. Plaintiff's medical history and testimony

Plaintiff developed a condition with his eyes known as keratoconus.[4] Plaintiff's symptoms included recorded visual acuity of his right eye of 20/100 with a notation that his sight was very blurry, and with recorded visual acuity of his left eye of 20/40 (AR 179). After an unsuccessful attempt to correct the condition with glasses, plaintiff saw an ophthalmologist, Ann

---

[4] "Keratoconus" is defined as "a non-inflammatory, usually bilateral protrusion of the cornea, the apex being displaced downward and nasally." *Dorland's Illustrated Medical Dictionary* (28th Ed.) at p. 878.

M. Renucci, M.D., in March 2004 (AR 168-69). At that time, plaintiff had a history of significant eye rubbing, as well as some photophobia[5] and itching (AR 168). Dr. Renucci recommended a rigid gas permeable contact lens for this condition (AR 169). The contact lens was a "terrible fit" and plaintiff was sent back to Dr. Renucci for a full evaluation (AR 171). In a letter dated December 6, 2005, Dr. Renucci stated that plaintiff had "a diagnosis of keratoconus causing legal blindness in his right eye" and that "a corneal transplant has been recommended for visual recuperation" (AR 167).

Dr. Renucci performed the transplant (i.e., penetrating keratoplasty, right eye) on February 1, 2006 (AR 161). During the operation, which involved donor tissue, "significant patient movement, coughing and non-cooperation was experienced" which required the use of general anesthesia (AR 161-62). The previously placed corneal sutures were removed and the cornea was re-fastened (AR 162). During the procedure, the surgeon stated that "[s]ignificant posterior pressure was continuously noted" and "continued iris prolapse was experienced" (AR 162). One day after surgery, plaintiff was in a lot of pain (AR 183). Five days after surgery, plaintiff reported pain "like a rock is inside his eye" (AR 182). On February 10th, plaintiff went to the emergency room reporting extreme pain, inability to sleep and photosensitivity (AR 198). Plaintiff continued to have problems with his eye. On July 25, 2006, plaintiff reported both eyes being sensitive to light (AR 190). On October 19, 2006, plaintiff reported that being in a car at night was difficult because the bright light hurt his right eye and caused pain in the back of his head (AR 188).

Plaintiff filed his applications for benefits in October 2006. On January 19, 2007, plaintiff reported pain in both eyes, a constant headache, continued light sensitivity and that his right

---

[5] "Photophobia" is defined as "abnormal visual intolerance of light." *Dorland's, supra,* at p. 1287.

eye felt like a piece of paper was in it (AR 280). By May 2007, plaintiff reported that his visual acuity in the right eye was getting worse and both eyes were photophobic (AR 276). Plaintiff also reported that he lost his job, having failed his driver's test at work, and had problems with depth perception, continued eye usage and light sensitivity (AR 276). Plaintiff saw Thomas Cowden, M.D., on June 19, 2007 (AR 232-33). The doctor assured plaintiff that the corneal graft was clear and that the light sensitivity was due to an irregular iris (AR 232-33). The doctor recommended a "painted rigid gas permeable contact lens to correct astigmatism and reduce glare from irregular iris" (AR 232).

A video administrative hearing was held on April 8, 2009, with the hearing officer presiding in Orland Park, Illinois, and plaintiff present in Grand Rapids, Michigan (AR 16). At the hearing, plaintiff testified regarding the extent of his light sensitivity. Plaintiff spends a typical day in his room with the curtains drawn describing it as like " a movie theater, dark" (AR 45). When plaintiff is in sunlight, the back of his head feels like it is on fire, his eyes twitch, and the stitches in his eye feel "lie a rock in the corner of my eye" (AR 45). He has worn sunglasses every day since his surgery (over three years) (AR 45-46). During the hearing, plaintiff held his hand over his head to shield his eyes from the sunlight (AR 46). Plaintiff does not drive and has to sit in the back of his minivan surrounded by tinted glass (AR 46). Plaintiff stated that he never goes out during the day but goes out only at night with his sunglasses because the stores are lit up too brightly (AR 46-47). Plaintiff listens to television, but cannot watch television because it takes too much effort, stating that "one side is all white with blurs" (AR 47-48). When plaintiff had the surgery, he worked in a factory for a temp agency (AR 48). Plaintiff anticipated being off of work for three to six months after the surgery (AR 48-49).

7

### B. The ALJ's decision

The ALJ's decision reviewed plaintiff's medical history and referred to more recent records provided by plaintiff's counsel. In a letter dated January 2, 2008, plaintiff's family doctor, Mark Joseph, M.D., performed a physical examination and noted that plaintiff reported continued vision disturbances, eye discomfort and "photophobia/significant light sensitivity," and that "he clearly needs sun glasses and tinting to protect his eyes" (AR 20, 238-39). In June 5, 2008, Dr. Cowden examined plaintiff, who reported blurred vision in the right eye and that the eye was "very light sensitive" (AR 20, 228). Dr. Cowden opined that plaintiff underwent a successful transplant with a good cornea and good result (AR 20, 228). Dr. Cowden encouraged plaintiff to return to the surgeon, Dr. Renucci, whom plaintiff had reportedly not seen due to "personal issues and misunderstandings" (AR 228). Dr. Cowden explained that the light sensitivity was most likely due to the previous iris prolapse which may have happened before or after the surgery (AR 20, 228-29).

The ALJ noted that in January 2007, the state agency consultants assessed plaintiff as having limited depth perception and limited near and far acuity (AR 20). The consultant recommended that claimant not perform work requiring very fine reading or prolonged computer work (AR 20). The medical expert (ME) present at the hearing, Dr. Carl Leigh, a physician specializing in internal medicine, concurred with the state agency assessment (AR 20). In this regard, Dr. Leigh further opined:

> . . . that the Claimant's symptoms and allegations of pain in the eye and photophobia to the extent he describes are consistent with the type of medical impairment which he has. That's the point of view of an Internist and I've never practiced any ophthalmology.

(AR 38).

The ALJ evaluated plaintiff's credibility as follows:

8

> In reaching my conclusion, I have also considered the claimant's testimony, but I do not find it supportive of the limitations greater than those included in my residual functional capacity. The claimant testified that after the surgery in February, 2006 he became extremely sensitive to bright lights, and spends much of the time in his room which is darkened with curtains. He testified that he goes out at night with his sunglasses on to places such as Meijer's to pick up a few things or to the gas station to pick up cigarettes. Because of the claimant's light sensitivity I limit him to working in an environment with reduced lighting such as a library type setting. While the claimant testified that he needs to be in a dark environment comparable to a movie theater darkness, the Activities of Daily Living Questionnaire indicates that the claimant has no problems with self-care including showering, shaving, dressing, and eating; and that he is able to pay bills and handle accounts; rather inconsistent with his testimony that he needs to be in a movie theater like darkness because of extreme sensitivity to light (Exhibit 4E [AR 141-48]).

(AR 21).

### C. Plaintiff's objections

Plaintiff raises two general arguments in opposition to the ALJ's decision.

### 1. ALJ's credibility determination is inadequate

Plaintiff objects to the ALJ's failure to adequately address plaintiff's credibility. Specifically, that the ALJ did not comment on photos of plaintiff's eyes, did not comment on the evidence of pain and light sensitivity in the file, and did not address the location, duration, frequency and intensity of the symptoms. An ALJ may discount a claimant's credibility where the ALJ "finds contradictions among the medical records, claimant's testimony, and other evidence." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 531 (6th Cir. 1997). The court "may not disturb" an ALJ's credibility determination "absent [a] compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). *See Casey v. Secretary of Health and Human Servs.*, 987 F.2d 1230, 1234 (6th Cir. 1993) (an ALJ's credibility determinations are accorded deference and not lightly discarded).[6]

---

[6] The court notes that the deference given to the ALJ's credibility determination is so great that in recent years the Sixth Circuit has stated in unpublished opinions that "[t]he ALJ's credibility findings are unchallengeable," *Payne v. Commissioner of Social Security*, No. 08-4706, 2010 WL 4810212 at *3 (6th Cir.

9

Nevertheless, an ALJ's credibility determinations regarding subjective complaints must be reasonable and supported by substantial evidence. *Rogers v. Commissioner of Social Security*, 486 F.3d 234, 249 (6th Cir. 2007).

SSR 96-7p requires that the ALJ provide specific reasons for a credibility determination, providing in pertinent part:

> The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight. This documentation is necessary in order to give the individual a full and fair review of his or her claim, and in order to ensure a well- reasoned determination or decision.

SSR 96-7p.[7] *See Rogers*, 486 F.3d at 249 (citing SSR 96-7p).

Plaintiff contends that the ALJ mishandled the credibility evaluation because he failed to consider the seven factors set forth in 20 C.F.R. § 404.1529(c)(3): the claimant's daily activities; the location, duration, frequency, and intensity of pain or other symptoms; precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of any medication taken to alleviate pain or other symptoms; treatment, other than medication, received for relief of pain or other symptoms; any measures used to relieve pain or other symptoms; and, other factors concerning functional limitations and restrictions due to pain or other symptoms. 20 C.F.R. § 404.1529(c)(3)(i-vii). An ALJ's failure to include detailed reasons in a credibility determination may constitute harmless error if the record demonstrates that the claimant had a sufficient opportunity to voice his

---

Nov. 18, 2010), and that "[o]n appeal, we will not disturb a credibility determination made by the ALJ, the finder of fact" *Sullenger v. Commissioner of Social Security*, No. 07-5161, 2007 WL 4201273 at *7 (6th Cir. Nov. 28, 2007).

[7] SSR's "are binding on all components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency. 20 C.F.R. § 402.35(b)(1).

subjective complaints and if the record shows that the ALJ took those complaints into account. *See, e.g., Spicer v. Apfel*, 15 Fed. Appx. 227, 234 (6th Cir. 2001) (the court found that such a harmless error existed when the ALJ took into account the claimant's subjective accounts of his pain on the one hand, and the objective medical evidence on the other, and concluded that the claimant was exaggerating his complaints of pain).

Based on a review of the record, the court concludes that a compelling reason exists in this instance to reverse the ALJ's credibility determination and remand for a re-evaluation. While the ALJ's decision considered and rejected plaintiff's testimony regarding his limitations arising from the photophobia, the decision did not address plaintiff's claim of post-surgical pain. Both the medical records and plaintiff's testimony refer to this pain, which plaintiff described to his medical providers in terms such as having a rock or piece of paper in his eye and a constant headache (AR 182, 188, 280). Furthermore, the ME found that plaintiff's reports of light sensitivity and pain as reflected in the medical record to be credible (i.e., "the Claimant's symptoms and allegations of pain in the eye and photophobia to the extent he describes are consistent with the type of medical impairment which he has") (AR 38).

In this case, the ALJ's failure to include detailed reasons for his credibility finding, which omitted reference to the post-surgical pain, was not harmless error. Unlike the decision in *Spicer*, the ALJ did not consider plaintiff's subjective complaints of pain, let alone compare those complaints with the objective medical evidence. In this regard, the ME testified that plaintiff's symptoms appeared consistent with his medical impairment. The Commissioner must provide a statement of evidence and reasons on which the decision is based. *See* 42 U.S.C. § 405(b)(1). While it is unnecessary for the ALJ to address every piece of medical evidence, *see Heston*, 245 F.3d at

534-35 (ALJ's failure to discuss a doctor's report was harmless error because the reviewing court should consider all of the evidence in the record). Nevertheless, an ALJ "must articulate, at some minimum level, his analysis of the evidence to allow the appellate court to trace the path of his reasoning." *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995). "It is more than merely 'helpful' for the ALJ to articulate reasons . . . for crediting or rejecting particular sources of evidence. It is absolutely essential for meaningful appellate review." *Hurst v. Secretary of Health and Human Services*, 753 F.2d 517, 519 (6th Cir. 1985), *quoting Zblewski v. Schweiker*, 732 F.2d 75, 78 (7th Cir.1984).

The ALJ failed to address plaintiff's complaints of pain and the ME's opinion that plaintiff's reported symptoms were consistent with his medical impairment. Accordingly, the ALJ's decision claim should be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should evaluate plaintiff's credibility with respect to his claim of post-surgical eye and head pain.

**2.      ALJ's standard of lighting used in the RFC**

In his RFC, the ALJ limited plaintiff to "work in an environment with reduced lighting such as a library type setting" (AR 19). Plaintiff objects to the ALJ's use of "reduced lighting such as a library type setting" as the standard for the amount or type of light that plaintiff can tolerate.

The RFC is a medical assessment of what an individual can do in a work setting in spite of functional limitations and environmental restrictions imposed by all of his medically determinable impairments. 20 C.F.R. § 404.1545. RFC is defined as "the maximum degree to which the individual retains the capacity for sustained performance of the physical-mental

12

requirements of jobs" on a regular and continuing basis. 20 C.F.R. Part 404, Subpt. P, App. 2, § 200.00(c); *See Cohen v. Secretary of Health and Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992).

Plaintiff contends that the standard of lighting used in the RFC lacks an evidentiary basis. The court agrees. The ALJ does not rely on any medical evidence in support of his finding that plaintiff can perform work related activities in an environment with "reduced lighting such as a library type setting." This, of course, also appears inconsistent with plaintiff's own testimony discussed above, which the ALJ did not entirely credit. There is no question that plaintiff has some impairment due to the photophobia. While plaintiff's treating doctors noted that he suffered from photophobia, none of them addressed the functional limitations of this diagnosis (AR 166, 182-83, 188-90, 193, 195-98, 200, 228). Plaintiff's family physician came the closest to quantifying his limitations by suggesting that plaintiff needed sunglasses and tinting to protect his eyes (AR 238). The ophthalmologists did not offer any opinions on plaintiff's ability to function at any particular level of lighting. However, there is no record that plaintiff told the ophthalmologists that he could only function in darkness akin to a movie theater. Finally, the ALJ did not elicit an opinion from the ME, who testified that plaintiff's symptoms of photophobia were consistent with his medical impairment and noted the way that plaintiff was protecting his eyes from the light during the video hearing.[8]

Based on this record, the ALJ's RFC determination does not appear to be supported by substantial evidence in the medical record. Accordingly, this matter should be reversed and

---

[8] The court notes while plaintiff testified that neither his regular driver's license or his chauffeur's license had been revoked (AR 39), this testimony does not establish that he is able to drive, but only that he has given the Secretary of State's Office no reason to investigate his licensure.

remanded pursuant to sentence four of 42 U.S.C. § 405(g) for re-evaluation of plaintiff's RFC with respect to his limitations for working in a lighted environment.

### IV.     Recommendation

For the reasons discussed, I respectfully recommend that the Commissioner's decision be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g). On remand, the Commissioner should re-evaluate both plaintiff's credibility with respect to eye pain and his RFC with respect to his limitations for working in a lighted environment.


Dated:  February 4, 2011                                          /s/ Hugh W. Brenneman, Jr.
                                                                               HUGH W. BRENNEMAN, JR.
                                                                               United States Magistrate Judge


ANY OBJECTIONS to this Report and Recommendation must be served and filed with the Clerk of the Court within fourteen (14) days after service of the report. All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to serve and file written objections within the specified time waives the right to appeal the District Court's order. *Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).